UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDGAR H. ZELAYA,<br><br>           Plaintiff,<br><br>      v.<br><br>JO ANNE B. BARNHART,<br>COMMISSIONER OF THE SOCIAL<br>SECURITY ADMINISTRATION,<br><br>           Defendant. | No. CV 05-5487-PJW<br><br>MEMORANDUM OPINION AND ORDER |

    Plaintiff Edgar H. Zelaya challenges the decision of the Social Security Administration (hereinafter the "Agency"), denying his claim for disability insurance benefits ("DIB"). Plaintiff claims that the Administrative Law Judge ("ALJ") erred when she: 1) determined that Plaintiff could still perform his former job, 2) found that Plaintiff's carpal tunnel syndrome was not a severe impairment, and 3) failed to properly defer to the opinion of Plaintiff's treating physician. For the following reasons, the ALJ's decision is reversed and the case is remanded for further proceedings.

A.  <u>The ALJ Erred In Concluding That Plaintiff Could Perform His Prior Work As a Parking Lot Attendant But The Error Was Harmless</u>

Plaintiff used to work as a parking lot attendant. (AR 49.) His job included taking money from customers, as well as serving as a valet--parking cars when customers arrived and retrieving them when they left. (AR 49.)

During the administrative hearing, the ALJ asked Plaintiff whether he could return to his old job as a parking lot attendant. (AR 49-51.) Plaintiff explained that he could not return to that job because it required him to run and get cars for customers and get in the cars and drive them. (AR 49.) The ALJ then shifted gears and asked whether Plaintiff would be able to work if he only had to act as the cashier at the parking lot, sitting on a chair and taking money from the customers. (AR 49.) Plaintiff testified that he could do that. (AR 49-50.) The ALJ then asked the vocational expert:

> Are these parking lot attendants, or is it a different job, that are stationed in a booth as opposed--and do not have to park cars?

(AR 50.)

The vocational expert responded:

> Yes, it's actually--falls under the [Dictionary of Occupational Titles] code for Cashier [II]. And they do exist. They have a stool, and their job is the cashier only.
> . . .

1  In combination between the parking lot cashiers, cashiers in
2  parking booths, such as at the airport, there are
3  approximately 4,000 jobs in greater Los Angeles, Long Beach
4  area . . . .
5 (AR 50.)
6  In her decision, the ALJ concluded that Plaintiff could perform
7 his past job as a parking lot attendant, basing her conclusion on the
8 vocational expert's testimony.  (AR 25.)  Plaintiff alleges that this
9 conclusion was erroneous.  He contends that the ALJ carved out a
10 portion of Plaintiff's duties as a parking attendant--taking money
11 from customers--and concluded that Plaintiff could do the whole job--
12 which required parking cars.  (Joint Stipulation 4-5.)  He argues that
13 under *Valencia v. Heckler*, 751 F.2d 1082 (9th Cir. 1985), the ALJ was
14 prohibited from doing that.
15  The ALJ appears to have erred when she concluded that the
16 vocational expert testified that Plaintiff could do his former work as
17 a parking lot attendant.  In fact, the vocational expert was never
18 asked to offer an opinion as to whether Plaintiff could perform this
19 job.  (AR 49-51.)  Instead, the ALJ asked the vocational expert if
20 Plaintiff could perform a different job, i.e., Cashier II, and the
21 vocational expert opined that he could.  (AR 50.)
22  Thus, the ALJ's finding that Plaintiff could perform his job as a
23 parking lot attendant based on the vocational expert's testimony was
24 erroneous.  The vocational expert never reached that conclusion and,
25 therefore, the ALJ's finding that he could is not supported by
26 substantial evidence.
27  Plaintiff contends that this error requires reversal.  The Court
28 disagrees.  The ALJ's error was harmless.  Clearly, Plaintiff could

perform the job of a Cashier II at a parking lot or other venue.  The best evidence of this is Plaintiff's own testimony.  (AR 49-50.)[1]  The vocational expert also testified that Plaintiff could perform this job.  Any error on the ALJ's part was harmless in that there is substantial evidence that Plaintiff could perform the job of Cashier II and there are an adequate number of these jobs in the economy.  *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)(applying harmless error analysis to ALJ's ruling by deciding whether substantial evidence supported ALJ's decision or whether ALJ's error negated the validity of his ultimate conclusion).

B.   The ALJ Did Not Err In Addressing Plaintiff's Carpal Tunnel Syndrome

Plaintiff next contends that the ALJ erred when she stated that Plaintiff's nerve conduction studies were "normal for [Plaintiff's] upper extremities. A.R. 22."  (Joint Stipulation at 10.)  He goes on to complain that: "As the report explicitly states, the nerve conduction study of [Plaintiff's] upper extremity was abnormal in that it demonstrated that Plaintiff suffers from moderate carpal tunnel syndrome."  (Joint Stipulation at 10.)

The Court is at a loss to understand precisely what Plaintiff's complaint is here.  The ALJ did note that Plaintiff's nerve conduction study for his upper extremities was abnormal and that Plaintiff had moderate carpal tunnel syndrome.  (AR 22.)  She stated in her decision:

---

[1] This job requires little or no exertion.  (AR 50.)  The attendant merely sits in a chair and takes money from customers as they go in or come out.  (AR 50.)

>A January 2-3, 2003 EMG [was] normal for the upper extremities, but abnormal for the lower extremities showing bilateral L4-L5 radiculopathy, acute and chronic, mild. Nerve Conduction Studies administered on the same day were also abnormal, revealing right carpal tunnel syndrom, moderate and bilateral nerve root impingement (Ex. 9-F).

(AR 22.)

Thus, Plaintiff's objection that the ALJ misread or misquoted the results is overruled. As to his related claim that the ALJ erred when she failed to include carpal tunnel syndrome in the list of severe impairments, the Court does not find Plaintiff's argument persuasive. Plaintiff did not believe his carpal tunnel syndrome had any impact on his ability to work. (AR 49-50, 87, 116-18.) Nor did his treating doctor, the one who referred him for the nerve conduction study in the first place, and who, after receiving the test results, listed eight diagnoses for Plaintiff, none of which was carpal tunnel. (AR 380-83.)

A severe impairment is one that more than minimally affects a claimant's ability to do work. *See* 20 C.F.R. § 404.1520(c). There is nothing in this record to suggest that Plaintiff's carpal tunnel syndrome had any effect on his ability to work. As such, the ALJ's failure to list it as a severe impairment was not error.

C.   <u>The ALJ Erred In Ignoring Plaintiff's Treating Physician's Opinion</u>

Finally, Plaintiff contends that the ALJ erred in formulating Plaintiff's residual functional capacity because she found that Plaintiff was only limited to performing work over head and Plaintiff's treating physician limited him from reaching at shoulder

level.  (Joint Stipulation at 13.)  He also complains that the ALJ overlooked the fact that Plaintiff's doctor restricted Plaintiff from performing certain neck movements, such as prolonged forward or upward gazing or repetitive turning of the neck.  (Joint Stipulation at 13.)  The Court agrees.

Plaintiff's treating doctor determined that Plaintiff was limited to no work *at* or above the shoulder.  (AR 215.)  He also restricted Plaintiff from "prolonged forward or upward gazing and no repetitive turning of the neck."  (AR 215.)  These limitations were based on objective and subjective factors.  (AR 210-17.)  The ALJ apparently rejected this portion of the treating physician's opinion, but she did not explain why.  (AR 23.)  This was error.  The treating physician's opinion is entitled to deference.  *See Magallanas v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  Though the ALJ may reject it, she must set forth specific and legitimate reasons for doing so.  *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).  Here, the ALJ was silent as to why the treating physician's restrictions were being disregarded.

The Agency contends that the ALJ rejected this part of the treating physician's opinion because she found that Plaintiff was not credible.  There are two problems with this reasoning.  First, the ALJ did not say so in her decision and this Court is limited to upholding the ALJ's decision only for the reasons she sets forth in her decision.  *See Ceguerra v. Secretary of Health and Human Services*, 933 F.2d 735, 738 (9th Cir. 1991).  Second, Plaintiff's treating physician's opinion that Plaintiff could not lift his arms or move his head in certain ways was based, in part, on objective evidence that-- even if Plaintiff's subjective complaints were ignored--would seem to support his findings.  (AR 210-17.)

For this reason, remand is required. On remand, the ALJ should address Plaintiff's doctor's limitations and explain why they are being rejected, if, in fact, they are. If they are not being rejected, it appears additional testimony from a vocational expert will be necessary to address whether Plaintiff can still work, despite those limitations.[2]

DATED:   March  20 , 2007.

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\ZELAYA\Memo_Opinion_Ord.wpd

---

[2] The Court recognizes that it has the discretion to reverse and remand for a calculation and award of benefits but finds that this is not warranted here.